# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDALL L. LITTLE, ) | |
| Bringing this action on behalf of the ) | |
| United States Government, ) | |
| ) | |
| Relator/Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-120-M |
| ) | |
| ENI PETROLEUM CO., INC. and ) | |
| AGIP EXPLORATION CO., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

This case is scheduled for trial on the Court's August 2009 trial docket.

Before the Court is defendants' Motion for Summary Judgment, filed April 1, 2009. On May 20, 2009, relator/plaintiff filed his response, and on June 1, 2009, defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction

Relator/Plaintiff Randall L. Little ("Little"), an employee with the Minerals Management Service of the Department of the Interior ("MMS"), brought the instant qui tam action against defendants, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.[1] Little alleges that defendants failed to pay royalties due on oil production from three specific leases after the United States government began taking its royalty production "in kind" in October 2002. Specifically, Little alleges that defendants improperly deducted transportation costs from the royalties they paid to the government. Defendants now move for summary judgment.

---

[1] The United States declined to intervene in this action. *See* Docket No. 22.

II.     Factual Background

The federal government promotes mineral development of the lands it owns, both onshore and offshore, by entering into contracts called "leases" with oil and gas companies. The leases permit the companies to explore, develop, and produce oil and gas from federal lands. The companies, known as "lessees," pay royalties to the government. MMS oversees the program. MMS can take royalties as cash payments based on the value of production (royalties in value) or can take payments in shares of the production itself (royalties in kind). The lessees are charged with calculating the royalties.

Defendant Eni Petroleum Co., Inc. ("Eni") operates three federal leases in deep waters in the Gulf of Mexico.[2] Those leases are known collectively as the "Allegheny Prospect" or "Allegheny unit." Prior to October 2002, Eni paid royalties for the Allegheny unit in value; however, in October 2002, MMS began taking its share of oil from the Allegheny unit in kind. MMS took its share of the oil and in turn sold that share to a small refining company, Gary-Williams Energy Corporation ("Williams"). The delivery point for the oil sold to Williams is located on the platform at Green Canyon 254.

Oil from the Allegheny unit flows to the platform at Green Canyon 254, one of the three federal leases. From there, it must be transported to shore by pipelines. The oil flows "downstream" through the Manta Ray (also sometimes called the "Allegheny") pipeline to another lease platform, which is designated Ship Shoal 332. At Ship Shoal 332, the oil flows into the Poseidon pipeline. The Poseidon pipeline transports the oil to the Houma station.

---

[2] Under the leases, Eni was required to file a monthly report (Form MMS-2014) of oil sale remittances for the preceding production month.

Eni paid to transport the oil from the Allegheny unit on the Manta Ray and Poseidon pipelines. For transportation on the Manta Ray pipeline, Eni was paying two types of transportation costs: (1) a flat monthly charge, known as a "demand charge,"[3] and (2) a second charge that varied based on the number of barrels that Eni shipped through the pipeline, known as a "commodity charge." Prior to October 2002, Eni deducted both of these costs from the royalties it paid to MMS. However, when MMS started taking its royalties in kind in October 2002, Eni was no longer paying the commodity charge for transporting MMS's oil on the Manta Ray pipeline and, thus, no longer deducted that charge from the royalties it paid to MMS. Eni did continue to pay, and to deduct from the royalties paid, the demand charge, which allowed it to have access to the pipeline.

In March 2004, MMS began to conduct a review of transportation deductions being taken by companies participating in the royalties in kind ("RIK") program. Little prepared a spreadsheet identifying 12 to 15 companies that were taking deductions that needed to be reviewed; Eni was on the list. Jill Gibson ("Gibson"), another MMS auditor, was assigned to review Eni's transportation deductions under the RIK program. After receiving a detailed spreadsheet showing the transportation deductions that Eni took between October 2002 and March 2004 from Gibson, Joel Arnold ("Arnold"), Gibson's supervisor, contacted Tony Pool ("Pool"), Eni's Revenue Accounting Manager, to ask about the transportation deductions. Pool responded that the deductions were related to the Manta Ray pipeline's monthly demand charge.

---

[3]The demand charge is set by a letter agreement between the Manta Ray company and British Borneo, a company which was acquired by Eni's parent company. Under the terms of the agreement, the demand fee terminated in August 2004. After August 2004, Eni no longer paid, and no longer deducted from its royalties, a demand charge for access to the Manta Ray pipeline.

3

After receiving additional information from Pool, Arnold, along with some members of the RIK program and others within MMS, reviewed the deductions to determine if they were appropriate. Arnold explained Eni's deductions to his supervisor, Roman Geissel ("Geissel"). Geissel, but not Arnold, had the authority to decide whether to challenge Eni's deductions. Geissel reviewed the information Arnold had collected and determined that Eni's deduction for the demand charge was appropriate and allowable. Geissel, accordingly, decided not to challenge Eni's deductions, and no further action was taken. After learning that MMS was not going to take any action regarding Eni's deductions, Little filed the instant action.

III.    Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

IV.   Discussion

Little asserts that from October 2002 to August 2004, defendants submitted false claims to MMS by way of the transportation deductions included on the MMS-2014 forms submitted in relation to the Allegheny unit in violation of 31 U.S.C. § 3729(a)(1)(G).[4] Liability for a reverse false claim arises if a person knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government. *See* 31 U.S.C. § 3729(a)(1)(G). Thus, in order to establish defendants' liability for the alleged reverse false claims, Little must show that (1) defendants made or used statements in order to avoid or decrease their obligation to pay money to the government; (2) the statements were false or fraudulent; and (3) defendants knew the statements were false or fraudulent.

Little contends that the transportation deductions were false or fraudulent not because defendants did not incur the transportation costs submitted but because defendants were not entitled to take those deductions pursuant to the applicable regulations and the Dear Operator Letter defendants received when the leases were placed in the RIK program. The pertinent regulations are the MMS Small Refiner regulations at 30 C.F.R. part 208. Part 208.8 addresses the lessee's right to deduct transportation costs and provides:

> The lessee shall deliver royalty oil from section 8 offshore leases issued after September 1969 at a delivery point to be designated by MMS. The lessee shall deliver royalty oil from section 8 offshore leases issued before October 1969 or from section 6 leases at a

---

[4] A subsection (1)(G) claim to avoid paying the government is known as a "reverse false claim."

> delivery point to be designated by the lessee.  <u>If the delivery point is on or immediately adjacent to the lease, the royalty oil will be delivered without cost to the Federal Government as an undivided portion of production in marketable condition at pipeline connections or other facilities provided by the lessee, unless other arrangements are approved by MMS.  If the delivery point is not on or immediately adjacent to the lease, MMS will reimburse the lessee for the reasonable cost of transportation to such point in an amount not to exceed the transportation allowance determined pursuant to 30 CFR Part 206.</u>  The MMS will include such transportation costs in the price charged for the oil taken in kind to reflect the value of the oil at the delivery point. Arrangements for delivery of the royalty oil from, or exchange of the oil at, the delivery point, and related transportation costs, are the responsibility of the purchaser of the royalty oil.  In addition, quality differentials between the royalty oil to which a purchaser is entitled and the oil which is made available at the delivery point are matters to be resolved between the purchaser and the operator.

30 C.F.R. § 208.8(b) (emphasis added).[5]  Additionally, the Dear Operator Letter provides, in pertinent part:

> The delivery points for Royalty Oil produced from the properties is at the FMP or first interconnect into a main pipeline, as identified in the enclosure.  The Lessor will take custody and responsibility for Royalty Oil at the delivery point.  You can be reimbursed for transportation and quality bank debits or credits of Royalty Oil to any delivery points identified in the enclosure that are downstream of the FMP.

Dear Operator Letter, attached as Exhibit 5 to defendants' Motion for Summary Judgment, at 1.

"Falsity under the FCA does not mean 'scientifically untrue'; it means 'a lie.'  At a minimum the FCA requires proof of an objective falsehood.  Expressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139 Fed.Appx. 980, 982-83 (10th Cir. 2005).  Further,

---

[5] In the case at bar, it is undisputed that the delivery point is on or immediately adjacent to the lease.

differences in interpretation growing out of a disputed legal question are also not false under the FCA. *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477-78 (9th Cir. 1996). Finally, "the FCA is not an appropriate vehicle for policing technical compliance with administrative regulations." *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999).

Having carefully reviewed the parties' submissions, the Court finds that even assuming that defendants' transportation deductions are not allowed under the applicable regulations and the Dear Operator Letter, those deductions are not false or fraudulent as a matter of law because defendants' interpretation of the regulations and Dear Operator Letter was reasonable, as shown by MMS' ultimate approval of the deductions. In this case, there is no disputed issue of fact as to whether defendants incurred the transportation cost – the demand charge – that they deducted on the MMS-2014 forms. Instead, this case involves disputed legal interpretations of whether the deductions were appropriate under the applicable regulations and Dear Operator Letter; Little contends the deductions were not appropriate; defendants contend they were. As the case law states: statements as to conclusions about which reasonable minds may differ and differences in interpretation growing out of a disputed legal question are not false under the FCA. *See Morton*, 139 Fed.Appx. at 983; *Hagood*, 81 F.3d at 1477-78. Because MMS, after reviewing the issue, determined that defendants' transportation deductions were appropriate and allowable, the Court finds that defendants' interpretation was reasonable as a matter of law. Specifically, the Court finds that because MMS ultimately found the deductions were appropriate, reasonable minds could not differ regarding whether defendants' interpretation was reasonable.

Accordingly, because defendants did not make or use a false or fraudulent statement, the Court finds that defendants are entitled to summary judgment.

V.     Conclusion

For the reasons set forth above, the Court GRANTS defendants' Motion for Summary Judgment [docket no. 95].

**IT IS SO ORDERED this 31st day of July, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE